IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TONY WOLFE | ) | |
| | ) | |
| v. | ) | NO. 3:14-1575 |
| | ) | |
| BRUCE WESTBROOKS, WARDEN | ) | |

**TO: Honorable Bernard A. Friedman, Senior District Judge**

### R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered August 8, 2014 (Docket Entry No. 2), the above captioned petition for a writ of habeas corpus filed under 28 U.S.C. § 2254 was referred to the Magistrate Judge for further proceedings under Rule 8(b) of the Habeas Corpus Rules, 28 U.S.C. § 636(b)(1)(B), and Rule 72.03 of the Local Rules of Court. For the reasons set out below, the undersigned respectfully recommends that the petition be denied and this action be dismissed.

### I.  FACTUAL BACKGROUND

Tony Wolfe ("Petitioner") is an inmate of the Tennessee Department of Correction ("TDOC") who is currently confined at the Lois M. DeBerry Special Needs Facility in Nashville, Tennessee. In January 2007, a jury in Shelby County, Tennessee found him guilty of first degree murder after he was involved in a shooting on September 11, 2004, that left a man dead. Plaintiff was sentenced to life imprisonment with the possibility of parole. *See* Habeas Corpus Petition (Docket Entry No. 1) at 1. Petitioner's conviction and sentence were affirmed upon his direct appeal to the Tennessee Court of Criminal Appeals, *State. v. Wolfe*, 2009 WL 1025871 (Tenn.Crim.App.

April 8, 2009),[1] and his application to the Tennessee Supreme Court for discretionary review was denied.

The historical facts of the crime are set out at length in the opinion of the Tennessee Court of Criminal Appeals on direct appeal and need not be recounted in full here. The state appellate court summarized the essential proof of the crime and Petitioner's defense as follows:

> The underlying crime occurred at a Memphis convenience store following an altercation between the defendant, the victim, and several other men. The defendant shot and killed the victim when the victim exited the store.
>
> At trial, the defendant asserted that the victim, Leondous Hawkins, and the two men with Hawkins were members of a gang that shot him in 1997. He contended that the three men displayed weapons to him inside the convenience store. He denied that he waited for the men to exit the store. He said that the trio shot at him and that he then shot at them in self-defense.

*Id*. at *1. Petitioner testified at trial to his version of the events and to his belief that he was threatened and acted in self-defense. However, seven witnesses to the incident offered testimony contrary to Petitioner's defense. Those witnesses testified to facts showing that neither the victim nor any of the other persons involved in the incident shot at Petitioner and that Petitioner, after initially shooting the victim when the victim exited the store, walked over to where the victim was laying wounded on the ground and fatally shot him in the head. *Id*. at **1-2.

In his direct appeal, Petitioner raised seven issues of trial court error, six of which the Tennessee Court of Criminal Appeals found were waived because Petitioner failed to cite supporting authority. *Id*. at *4. Petitioner's sole non-waived issue was that the trial court abused its discretion by holding the criminal trial during unreasonable hours. *Id.* After a thorough review of the issue, the Tennessee Court of Criminal Appeals found that the issue did not support relief, concluding that:

> Our review of the record reflects that unusual circumstances were present here. The jury was sequestered, and the defendant's dialysis precluded morning sessions three times a week. Under these circumstances, it was reasonable for the trial court to conduct later sessions. The trial court was faced with holding short sessions on the days the defendant underwent dialysis. The decision was made to conduct extended sessions that were, in essence, a normal working day. Thursday was the only day, based on the record, that the trial court went beyond standard workday hours. The

---

[1] *See* Docket Entry No. 13-21.

longer Thursday session was conducted with liberal recesses and breaks. The
defendant is not entitled to any relief on this issue.

*Id.* at *5.

Petitioner thereafter filed a *pro se* petition for post-conviction relief in the state court, raising several claims that centered on allegations that his trial counsel, who was by then deceased, had been constitutionally ineffective in his representation of Petitioner.[2] In support of these claims, he provided a letter purportedly written to him by his trial counsel on April 15, 2009, shortly after his direct appeal was denied in which counsel stated, among other things, that it was a "crooked trial" and that "I will testify . . . that I was ineffective because I was sleep deprived and that I totally screwed your case up."[3] After appointing counsel to Petitioner and holding a hearing, the state court denied the petition on March 8, 2012.[4] Upon appeal, the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. *See Wolfe v. State*, 2013 WL 5488574 (Tenn.Crim.App. September 30, 2013).[5] In its decision denying relief, the Tennessee Court of Criminal Appeals found that:

> [o]n appeal, the petitioner maintains that trial counsel should have shown the jury evidence that the victims were members of a gang who had previously shot him and that, therefore, he acted in self-defense. We note that on direct appeal, this court said:
>
>> At trial, the [petitioner] asserted that the victim, Leondous Hawkins, and the two men with Hawkins were members of a gang that shot him in 1997. He contended that the three men displayed weapons to him inside the convenience store. He denied that he waited for the men to exit the store. He said that the trio shot at him and that he then shot at them in self-defense.
>
> *State v. Tony Wolfe*, No. W2008-01243-CCA-R3-CD, 2009 WL 1025871, at *1 (Tenn.Crim.App. at Jackson, Apr. 8, 2009). In other words, the record reveals that the jury heard the evidence the petitioner wanted them to hear. Accordingly, there is no evidence that trial counsel was ineffective in this regard.

---

[2] *See* Docket Entry No. 13-23 at 10-18.

[3] *Id*. at 19.

[4] *Id*. at 32-34.

[5] *See* Docket Entry No. 13-27.

3

The petitioner's chief complaint seems to be that counsel was ineffective by being sleep deprived and "out of it" during trial. Specifically, the petitioner argues that

> the admission of counsel in the letter made exhibit to the hearing was in a sense testimony from the grave. But that admission was not unsupported, as counsel set this record from the trial on as he felt that the conditions for trial impaired his ability to represent his client. In this matter, the [petitioner's] conviction if sustained without retrial is tainted by the cloud of his trial counsel's statements, especially in light of the serious nature of the charge and sentence in this case. Justice demands that [the petitioner] receive a new trial in the matter.

We acknowledge that in the letter, counsel stated that he was sleep deprived during the trial; however, we note that the letter does not state specifically what counsel could have done or failed to do because he was sleep deprived. Therefore, the letter contains no specific allegation of deficiency or prejudice the petitioner may have suffered by the alleged deficiency and fails to establish that counsel was ineffective.

Further, the post-conviction court stated that this issue was addressed on direct appeal. Specifically, this court's opinion on direct appeal reveals that trial counsel contended that the "trial court . . . conduct[ed] the trial under unreasonable hours 'for no good reason,' . . . which rendered [trial counsel] tired and unable to concentrate." On the third day of trial, after the trial court stated an intention to work late that evening,

> [t]rial counsel informed the court that he was taking medicine that might affect his ability to work longer hours and might render him ineffective. The trial court asked counsel if he wanted a mistrial, and he declined. He said he felt fine but surmised that he could only work until 8:30 p.m. that day. The record reflects that the court adjourned sometime after 10:00 p.m., after trial counsel concluded his direct examination of the defendant. The State objected that trial counsel had deliberately engaged in time-consuming irrelevant questioning to circumvent the State from conducting an immediate cross-examination.
>
> Trial counsel did not complain that the late hour was affecting his ability to represent his client. The record reflects that trial counsel stated that he was being "thorough" in his direct examination. The record further reflects that the trial court took a long dinner break and several additional breaks throughout the day.

Moreover, at the post-conviction hearing Assistant District Attorney General Zak testified that trial counsel was thorough in his cross-examination of witnesses and "brilliant" in his presentation of the theory of defense. Additionally, the proof against the petitioner was overwhelming. Several witnesses to the shooting testified at trial, and the State played for the jury a video of the shooting. The jury heard the petitioner's claim of self-defense and rejected it. The post-conviction court found that there was no evidence that trial counsel's performance was diminished by the hours of the trial or by any alleged sleep deprivation. To the contrary, the court found that counsel's representation was thorough, meticulous, and detailed and that he zealously and vigorously defended the petitioner. The record does not preponderate

4

>against this finding. . . . In sum, we conclude that the petitioner has failed to prove
>that his counsel was deficient or that he was prejudiced by any alleged deficiency.

*Id*. at \*\*6-8. Petitioner's application to the Tennessee Supreme Court for discretionary review was denied.

## II. FEDERAL PETITION AND PROCEDURAL BACKGROUND

On August 1, 2014, Petitioner, with the benefit of counsel, filed the instant petition under 28 U.S.C. § 2254 to set aside his conviction and obtain a new trial. He sets out two grounds for relief. First, he contends that his trial counsel was constitutionally ineffective because: (a) counsel was taking mind-impairing medication and was sleep deprived and exhausted during the trial; (b) counsel failed to accept a mistrial offered by the trial judge because of counsel's fatigue; (c) counsel failed to develop exculpatory evidence from the scene of the incident; and, (d) counsel failed to call Kim Eagle as a trial witness regarding Petitioner's state of mind at the time of the crime. *See* Petition at 5. Petitioner's second ground for relief is that the trial judge erred by ruling that trial counsel could not present the testimony of Kim Eagle at trial in support of his self-defense argument. *Id*. at 7. Ms. Eagle, who worked as a nurse in TDOC and met Petitioner when he was a TDOC inmate in 2003,[6] declares that Petitioner frequently expressed to her his fear that he would be harmed again by the men who shot him in 1997 if he returned to Memphis. Ms. Eagle declares that she attended Petitioner's trial and was prepared to testify on his behalf but that she was not called as a witness. In support of his grounds for relief, Petitioner provided: (1) the April 15, 2009, letter from his former trial counsel, *see* Docket Entry No. 1-1 at 1; (2) a declaration from Kim Eagle, *id*. at 2-3; and, (3) copies of the trial and appellate court decisions in his post-conviction relief proceeding. *Id*. at 4-12.

Respondent filed an answer on October 20, 2014. *See* Docket Entry No. 12. Respondent argues that Petitioner's claim that his trial counsel was constitutionally ineffective due to being sleep

---

[6] Petitioner was confined in TDOC during 2003 for crimes unrelated to the instant habeas matter and was released from TDOC prior to the 2004 crime for which he is currently imprisoned.

deprived at trial does not support habeas corpus relief because the denial of this claim by the state post-conviction court was neither contrary to nor an unreasonable application of clearly established law. *See* Docket Entry No. 12. Respondent contends that Petitioner's other assertions of ineffective assistance of counsel and his claim of trial court error have been procedurally defaulted and are barred from review because they were not properly presented to the state courts. *Id.*

Several months after Respondent's answer and nearly a year after the petition was filed, Petitioner moved to file an amended petition to add a new claim that was, at that point, unexhausted. *See* Motion to amend (Docket Entry No. 17). The motion to amend was granted, and the action was stayed upon Petitioner's request while he sought relief in state courts. *See* Order entered February 26, 2016 (Docket Entry No. 20). In his amended petition (Docket Entry No. 21), Petitioner expanded his ineffective assistance of counsel claim to encompass the allegation that trial counsel failed to have a forensic mental evaluation conducted on Petitioner prior to his trial even though Petitioner requested an evaluation. Petitioner asserts that he was diagnosed with Post-Traumatic Stress Disorder ("PTSD") in December 2014 while in TDOC, a condition he attributes to his shooting in 1997. He argues that had trial counsel sought to have him evaluated as part of his defense of Petitioner, his PTSD would have been uncovered prior to his trial and the disclosure to the jury that Petitioner suffered from PTSD linked to being shot in 1997 by the victim of his crime would have favorably impacted his trial defense of self-defense and raised a reasonable doubt about the *mens rea*/premeditation elements required for a first degree murder conviction.

Upon the stay of the habeas corpus action, Petitioner moved to re-open his state petition for post-conviction relief in order to raise the "failure to evaluate" claim based upon new evidence, which consisted of (1) his 2014 TDOC mental health records and (2) a forensic psychological evaluation of Petitioner conducted by Dr. Pamela Auble in February 2016 ("Auble Report") that affirmed his PTSD diagnosis and linked the disorder to the 1997 incident in which he was shot. The motion was denied by the state court, which found that the type of post-conviction mental health diagnosis set forth by Petitioner does not constitute newly discovered scientific evidence under

Tennessee law and, further, was not evidence that established the actual innocence of Petitioner.[7] Accordingly, the state court found that Petitioner had not met the statutory standard set out in Tenn. Code. Ann. § 40-30-117(a)(2), which allows a motion to re-open if "the claim in the motion is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted." *Id*. Petitioner thereafter failed to properly appeal the denial of his motion to re-open in accordance with Tennessee law, and the Tennessee Court of Criminal Appeals dismissed his appeal on this ground without considering the merits of his appeal or his underlying claim. *See State v. Wolfe*, 2017 WL 1093992 at *4 (Tenn.Crim.App. Mar. 22, 2017).

Petitioner then filed a new motion in the state court to re-open his post-conviction petition, based upon the same "failure to evaluate" claim. This motion was denied by the state court without consideration of the merits as collaterally estopped.[8] Petitioner's application for permission to appeal was denied by the Tennessee Court of Criminal Appeals, which determined that his claim was barred by the application of the collateral estoppel doctrine.[9] Petitioner's application to the Tennessee Supreme Court for discretionary review was denied on June 8, 2018.[10]

Having been unsuccessful in obtaining relief in the state courts on the "failure to evaluate" claim, Petitioner' moved on August 3, 2018, to lift the stay and proceed on his amended petition. *See* Docket Entry No. 29. The motion was granted and Respondent was directed to respond to the amended petition. *See* Order entered August 29, 2018 (Docket Entry No. 31). Respondent filed an answer to the amended petition, arguing that Petitioner has procedurally defaulted the "failure to evaluate" claim raised in the amended petition and has not presented evidence to excuse the procedural default. *See* Answer to Amended Petition (Docket Entry No. 33).

---

[7] *See* Docket Entry No. 29-4.

[8] *See* Docket Entry No. 29-10.

[9] *See* Docket Entry No. 29-12.

[10] *See* Docket Entry No. 29-13.

# III. STANDARDS FOR HABEAS CORPUS REVIEW

Generally, in order to respect state court rulings in criminal cases and to preserve federalism principles, *see Martinez v. Ryan*, 566 U.S. 1, 9 (2012), before a federal court rules on the merits of a petition seeking collateral habeas corpus relief under 28 U.S.C. § 2254: (1) the petitioner must have exhausted his available state remedies for his claims, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1)(A); and, (2) the petitioner's claims must not be procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

The doctrine of exhaustion requires state prisoners to fully and fairly present their claims to the state courts as a matter of federal law before raising those claims in a federal habeas corpus petition. 28 U.S.C. § 2254(b)(1)(A) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001). In order to exhaust a claim, the petitioner must have given the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin*, 541 U.S. at 29. The exhaustion requirement is satisfied if a prisoner invokes one complete round of the State's established appellate review process. *O'Sullivan*, 526 U.S. at 839-40, 845.

For claims that have been presented to the state courts and reviewed on the merits by the state courts, the language of 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (1996), applies and provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Bell v. Cone*, 535 U.S. 685, 693 (2002), the Supreme Court reiterated that the AEDPA modified a federal court's role in reviewing state prisoner applications for relief under Section 2254 "in order to prevent federal habeas 'retrials' and to ensure that state court convictions

are given effect to the extent possible under the law." By its terms, Section 2254(d) bars habeas relief for a claim adjudicated on the merits in state court unless the exceptions in Sections 2254(d)(1) and (d)(2) are satisfied. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011). As the Supreme Court has advised, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies [that principle] to the facts of the particular case." *Bell*, 535 U.S. at 694. When a federal court reviews the reasonableness of factual determinations made by a state court, the factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003).

A claim is procedurally defaulted if it was presented to the state court but was denied by the state court because of the application of a state procedural rule. *Martinez*, *supra*. A claim is also deemed to be procedurally defaulted if the claim was not fully and fairly raised in the state court and the petitioner no longer has state remedies available by which to pursue the claim. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012). In this situation, the claim is viewed as technically exhausted, but the petitioner's failure to raise the claim has prevented the claim from being reviewed by the state court and, thus, the principles of procedural default apply. *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009); *Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002).

For claims that have been procedurally defaulted, the path to habeas corpus relief is demanding. To excuse the procedural default of a claim and permit consideration of the claim, the

9

petitioner must show "cause for the default and prejudice from the asserted error." *House v. Bell*, 547 U.S. 518, 536 (2006); *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015). The burden of showing cause and prejudice to excuse procedurally defaulted claims is on the habeas petitioner. *Id*.; *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999). Alternatively, the petitioner may show that a fundamental miscarriage of justice will result if there is not federal review of a claim. *House*, *supra*.

## IV. ANALYSIS AND CONCLUSIONS

Upon consideration of the entire record, it appears that an evidentiary hearing is not required in this matter. Therefore, the Court should dispose of the petition as the law and justice require. *See* Rule 8, Rules Governing Section 2254 Cases; 28 U.S.C. § 2254(e)(2); *Mitchell v. Rees*, 114 F.3d 571 (6th Cir. 1997); *Loveday v. Davis*, 697 F.2d 135, 137-40 (6th Cir. 1983).

A. <u>Ineffective Assistance of Counsel</u>

The Sixth Amendment to the United States Constitution guarantees the right of a person accused of a crime to the effective assistance of counsel. To establish a claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was in some way objectively deficient to the point that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687-690 (1984). Further, Petitioner must show that the deficient performance prejudiced his defense such that Petitioner was deprived of a fair trial, or, in other words, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 692-94; *Ward v. United States*, 995 F.2d 1317, 1321-22 (6th Cir. 1993); *Sims v. Livesay*, 970 F.2d 1575 (6th Cir. 1992). Because "counsel is strongly presumed to have rendered adequate assistance" and the acts of counsel are viewed within the context of the circumstances at the time and not with the benefit of hindsight, judicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689-90; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994); *Sims*, 970 F.2d at 1579-80. As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."

*Strickland*, 466 U.S. at 688. To establish prejudice due to his counsel's errors or omissions, Petitioner must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams*, 529 U.S. at 390–91; *Strickland*, 466 U.S. at 694.

Petitioner contends that his trial counsel was constitutionally ineffective and sets forth five theories in support of this contention: (1) counsel was taking mind-impairing medication and was sleep deprived and exhausted during the trial; (2) counsel failed to accept a mistrial offered by the trial judge because of counsel's fatigue; (3) counsel failed to develop exculpatory evidence from the scene of the incident; (4) counsel failed to call Kim Eagle as a trial witness regarding Petitioner's state of mind at the time of the crime; and, (5) counsel failed to have a forensic mental evaluation conducted on Petitioner prior to his trial. None of these theories support habeas corpus relief.

The state post-conviction relief court considered and rejected Petitioner's theory that his trial counsel was sleep-deprived and "out of it" at his trial. The Court has reviewed the record and finds that the state court's decision was neither an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The state court correctly recognized *Strickland* as the controlling law and applied the *Strickland* standard to find that trial counsel's performance was not deficient and that Petitioner was also not prejudiced by any alleged deficiency. *See Wolfe v. State*, 2013 WL 5488574 at **6-8. There was evidence presented in the state post-conviction relief proceeding that can reasonably be viewed as supporting the state court's factual findings and its ultimate decision that Petitioner's trial counsel was not deficient. *Id*. The state court's determinations that trial counsel's performance was not diminished but was thorough, meticulous, and detailed, and that counsel zealously and vigorously defended Petitioner is entitled to a presumption of correctness in this Court. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Skaggs*, 235 F.3d at 266. Petitioner has not presented clear and convincing evidence sufficient to overcome this presumption.

Within the context of a claim for relief under Section 2254, the question for the Court is not whether the Court would reach the same conclusion as the state court if presented with the question upon a direct review or upon *de novo* review. *Harrington*, 562 U.S. at 101. The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. *Id*. The *Strickland* standard is not subject to bright line thresholds and it allows for a strong presumption that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 688. The issue is not whether Petitioner received the best representation possible but whether his attorney's representation amounted to incompetence under the prevailing professional norms. *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690) (internal citations omitted). Given these legal principles, the state court's decision on Petitioner's first theory of ineffective assistance of counsel was not contrary to or an unreasonable application of *Strickland*.

Petitioner's next three theories of ineffective assistance of counsel – that counsel failed to accept a mistrial offered by the trial judge, failed to develop exculpatory evidence from the scene of the incident, and failed to call Kim Eagle as a trial witness – were not distinctly raised by Petitioner in his petition for post-conviction relief. Although Petitioner raised claims of ineffective assistance of counsel based on other theories, these three specific theories were not raised by Petitioner in either his petition for post-conviction relief, *see* Docket Entry No. 13-23 at 10-18, or in his appeal from the denial of post-conviction relief. *See* Post-conviction Appellate Brief (Docket Entry No. 13-25). Petitioner's failure to distinctly raise these theories renders them unexhausted because they were not fully and fairly presented to the state court for review. *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002) ("Petitioner's ineffective assistance counsel claims raised on federal habeas rest on different theories than those raised in the state postconviction proceedings, and are therefore procedurally defaulted"); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (holding that a claim was procedurally defaulted because it "rest[ed] on a theory which is separate and distinct from the one previously considered and rejected in the state court"). Because no further avenue for review of claims based on these theories now exists under state law, the claims are deemed to be procedurally

defaulted. *Jones*, *supra*. Plaintiff has not met his burden of showing cause for the procedural default and actual prejudice arising from the assertions of ineffective assistance of counsel. Accordingly, these theories of ineffective assistance of counsel warrant dismissal without review on their merits.

Petitioner's final theory of ineffective assistance of counsel is the "failure to evaluate" theory set out in his amended petition. *See* Amended Petition at 8 ¶ 1. Despite Petitioner's attempt to raise this claim before the state courts, it has been not been properly exhausted and has been procedurally defaulted. Petitioner's first attempt to raise the claim in his original petition for post-conviction relief resulted in a procedural default because the claim was not pursued as part of Petitioner's appeal from the denial of post-conviction relief and, thus, the claim was not fully exhausted before the state courts. Plaintiff has not attempted to show that cause and prejudice exists to excuse the original procedural default of this claim.

Petitioner's more recent attempt to raise this claim before the state courts has likewise resulted in a procedural default because the claim was denied on the basis of a state law ground – Petitioner's failure to properly appeal under state law – that is unrelated to the merits of the claim and is adequate to support the state court's judgment. Federal habeas relief may be precluded on a claim that Petitioner did not present to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). In such a circumstance, the Court engages in a four-part inquiry to determine if the procedural default bars review of the merits of the claim: (1) did the petitioner fail to comply with a state procedural rule; (2) do the state courts enforce the rule; (3) was the state procedural rule an adequate and independent state ground for denying review of a federal constitutional claim; and, (4) has the petitioner shown cause and prejudice excusing the default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Tennessee has in place statutorily created procedural rules and filing requirements regarding the manner of appeal from the denial of a motion to reopen a post-conviction relief petition. *See* Tenn. Code. Ann. § 40-30-117(c); Tennessee Supreme Court Rule 28, § 10(b). Petitioner failed to

13

comply with these rules and requirements, and the state court enforced these rules and requirements in denying Petitioner's appeal from the denial of his motion to reopen the post-conviction relief petition. The state court's decision was made without consideration of the merits of Petitioner's claim of a constitutional violation. As pointed out in Respondent's answer to the amended petition for habeas corpus relief, the Tennessee courts regularly apply these procedural rules and requirements. *See* Docket Entry No. 33 at 11-12. As firmly established and regularly followed by the state courts, these procedural rules and requirements are an adequate and independent basis upon which Petitioner's claim was denied by the state court. Accordingly, Petitioner's claim has been procedurally defaulted.

Petitioner does not argue that cause and prejudice exists to excuse this procedural default but, instead, argues that it would be a fundamental miscarriage of justice if the "failure to evaluate" claim is not reviewed on the merits. *See* Petitioner's Motion to lift stay and proceed on amended petition (Docket Entry No. 29) at 3-5. The fundamental miscarriages of justice exception to a procedural default, however, is narrow and applies only where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (*citing Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) ); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). There is a stringent standard for establishing a credible claim of actual innocence. Actual innocence means factual innocence, not mere legal insufficiency or legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Petitioner's argument for the application of the miscarriage of justice exception lacks merit. Petitioner contends that his conviction of first degree murder was necessarily based on the jury's determination that he premeditated the killing of his victim. He argues that the jury's determination would have been different and he could possibly have been convicted of a lesser offense had he been mentally evaluated at the time of his trial and had the jury heard evidence of his PTSD diagnosis. The problem with Petitioner's argument is that it attacks the legal sufficiency of his conviction and

Case 3:14-cv-01575   Document 36   Filed 12/11/18   Page 14 of 16 PageID #: 3021

fails to show his actual, or factual, innocence of killing his victim. Such an argument does not fall within the narrow miscarriage of justice exception. *See Harvey v. Jones*, 179 Fed.App'x. 294, 298-99 (6th Cir. 2006). *See also Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) (arguments that petitioner was not guilty of first degree murder because he was intoxicated and acted in self-defense go to legal innocence); *Robinson v. Morrow*, 2015 WL 5773422 at *20 (M.D.Tenn. Sept. 30, 2015) (Sharp, J.) (collecting cases for proposition that actual innocence of the purposes of the miscarriage of justice exception is not satisfied by newly discovered evidence that would merely lower the degree of offense or lessen the degree of culpability).

B. Trial Court Error

Petitioner contends that he was prevented from presenting his defense at trial because the trial judge did not allow Kim Eagle to testify. He argues that her testimony was important to showing his state of mind at the time of the shooting and would have supported his self defense theory. Under the Sixth Amendment, an accused has the right to present testimony that is "relevant," "material," and "vital to the defense." *Washington v. Texas,* 388 U.S. 14, 16 (1967).

This claim was not presented to the state courts for consideration and, thus, was not exhausted by Petitioner prior to being raised in this habeas corpus action. Although several claims of trial court error were raised in Petitioner's direct appeal, the claim of trial court error that Petitioner now raises in his habeas corpus petition was not included in those claims. *See* Brief upon direct appeal (Docket Entry No. 13-18). Further, the claim was not presented to the state court in the post-conviction relief proceeding as either an independent claim or as part of Petitioner's claim of ineffective assistance of counsel. S*ee* Post-conviction Petition (Docket Entry No. 13-23 at 10-18) and Post-conviction Appellate Brief (Docket Entry No. 13-25). Although Petitioner asserts in his petition that "this ground was argued as part of the ineffective assistance of counsel claim. While it should have been raised independently, it was raised as part of the ineffective claim," *see* Petition at 7, the Court finds Petitioner's assertion to be unsupported by the state court record, a review of

15

which fails to show that this ground was argued in any manner as part of Petitioner's claim of ineffective assistance of counsel.

Because no further avenue for review of this claim now exists under state law, the claim is deemed to be procedurally defaulted. *Jones*, *supra*. Petitioner has not met his burden of showing cause for the procedural default and actual prejudice arising from the alleged error. Accordingly, this claim warrants dismissal without review on the merits.

## RECOMMENDATION

For the reasons set out above, the undersigned respectfully RECOMMENDS that the Petition for a writ of habeas corpus be DENIED and this habeas corpus action be DISMISSED.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge